## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                         No. CR 13-0957 JB

CHRISTOPHER CANDELARIA,

       Defendant.

### UNSEALED MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on: (i) the Sealed Sentencing Memorandum Requesting Downward Departure and Downward Variance, filed December 20, 2013 (Doc. 29)("Memo."); and (ii) the Sealed Defendant's Objection to Presentence Investigative Report, filed December 20, 2013 (Doc. 30)("Objection"). The Court held a hearing on January 6, 2014. The primary issue is whether Defendant Christopher Candelaria, who pled guilty to violating 18 U.S.C. § 924(c)(1)(A) for using and carrying a firearm during and in relation to a drug trafficking crime, is safety-valve eligible under the United States Sentencing Guidelines § 5C1.2. The Court concludes that Candelaria is not safety-valve eligible, because the "in connection with" requirement from § 5C1.2 is analogous to the "in relation to" requirement from

---

[1]In its Sealed Memorandum Opinion and Order, filed July 11, 2014 (Doc. 35)("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information in the Sealed MOO before the Court published a public version of the Sealed MOO. See Sealed MOO at 1 n.1. The Court gave the parties fourteen calendar days to provide notice of any proposed redactions. See Sealed MOO at 1 n.1. Plaintiff United States of America does not request any redactions before the Court files a non-sealed version of the Memorandum Opinion and Order. See United States Sealed Notice Regarding Redactions on Doc. 35, filed July 11, 2014 (Doc. 38). Defendant Christopher Candelaria has not contacted the Court or made any filings within CM/ECF, the Court's Case Management/Electronic Case Files, to indicate that he has any proposed redactions. Consequently, the Court is now re-filing the Sealed MOO in an unsealed form.

18 U.S.C. § 924(c)(1); the Court finds that Candelaria used or possessed the firearm in connection with a drug trafficking offense, because he knew that the firearm was in the same backpack as the methamphetamine he was trafficking.  The Court will deny Candelaria's request for the safety-valve that he made in the Memo., and it will overrule his Objection on the same issue.

**FACTUAL BACKGROUND**

On July 24, 2013, Candelaria admitted the following facts:

> On or about February 28, 2013, I, CHRISTOPHER CANDELARIA, possessed over 50 grams of a substance containing methamphetamine, with the intent to distribute it to another person, in Sandoval county in New Mexico.  At the same time, I also used and carried a .40 caliber Beretta pistol during and in relation to my possessing the substance containing methamphetamine.

Plea Agreement at ¶ 8.A, at 4, filed July 24, 2013 (Doc. 21).  The Presentence Investigation Report, disclosed September 18, 2013 ("PSR"), states that "[a] search of [Candelaria's] vehicle revealed a backpack containing approximately 300 grams of methamphetamine, a loaded .40 caliber Berretta model semi-automatic pistol in the same compartment as the methamphetamine, a digital scale with methamphetamine residue, and two glass smoking pipes with methamphetamine residue."  PSR ¶ 7, at 5.

**PROCEDURAL BACKGROUND**

Candelaria pled guilty to two counts of a three-count indictment, charging: (i) 21 U.S.C. § 841(a)(1), and (b)(1)(B), possession with intent to distribute fifty grams or more of a mixture and substance containing methamphetamine; and (ii) 18 U.S.C. § 924(c), using and carrying a firearm during and in relation to a drug trafficking crime.  See Plea Agreement ¶ 3, at 2.  In the PSR, the United States Probation Office ("USPO") notes that the "guideline imprisonment sentence for Count 2 of the Indictment" -- the violation of 18 U.S.C. § 924(c) -- "is 60 months,

required by statute, which must be imposed to run consecutive to Count 1 of the Indictment." PSR ¶ 12, at 5-6.  On Count 1, the USPO relies on U.S.S.G. § 2D1.1 to calculate a base offense level of 34.  See PSR ¶ 13, at 6.  The USPO decreased the offense level by 2 levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), and decreased an additional 1 level for acceptance of responsibility pursuant to § 3E1.1(b), resulting in a total offense level of 31. See PSR ¶¶ 20-22, at 6.  The USPO asserts that Candelaria is "not safety valve eligible."  PSR ¶ 78, at 17.

Candelaria asserts that he "put the methamphetamine in the backpack that belonged to the [confidential source ("CS")] and intended to return the backpack to the CS when he made delivery of said methamphetamine," but that "[t]here is no evidence that Mr. Candelaria's fingerprints were found on the pistol," nor is there "evidence that Ms. Candelaria actively possessed the gun by touching it."  Objection ¶¶ 5-9, at 2.  Candelaria objects to the PSR's conclusion that he is not safety valve eligible pursuant to § 5C1.2 and 18 U.S.C. § 3553(f).  See Objection at 4.  He argues that the 2-level decrease pursuant to U.S.S.G. § 5C1.2(a)(2) is appropriate, because, in his view, he did not use or possess a firearm in connection with the drug trafficking offense.  See Objection at 4.  He compares his case to United States v. Mendez-Velarde, 798 F. Supp. 2d 1249, 1251 (D.N.M. 2011)(Browning, J.), in which the Court determined that the defendant was safety-valve eligible after finding that the defendant did not possess a firearm in connection with the offense within the meaning of § 5C1.2.  See Objection at 6-7.  Candelaria points out that, in United States v. Mendez-Velarde, the defendant was selling prepackaged quantities of methamphetamine out of a hotel room, and the methamphetamine was in a small lock box that also contained a handgun.  See Objection at 6 (citing 798 F. Supp. 2d at 1251).  "The defendant contended he did not pack the box or decide what would go in the box,

did not remove the gun from the box, and received the box and its contents from his superior in the organization"; further, he "did not touch the gun, . . . did not expect to, and the gun was not loaded."  Objection at 7 (citing 798 F. Supp. 2d at 1251).  Candelaria explains that the

> Court determined that the defendant did not actively possess the gun in the lock box, because the defendant did not request the gun, did not know the gun would be in the box, never touched the gun or took steps to possess it, and there was no fingerprint evidence connecting the defendant to the gun,

and that, "while there was some evidence that the defendant may have actively possessed the gun, the preponderance of the evidence supported a finding that the defendant did not possess the gun, even though the drugs were being sold out of the lock box."  Objection at 7 (citing 798 F. Supp. 2d at 1253).

Likewise, Candelaria argues that he is safety-valve eligible, because, in his view, there is no evidence that his fingerprints were on the gun or that he actively possessed the gun. Objection at 7.  Although the gun was loaded, he asserts that "[t]he compartment (backpack) belonged to the CS and was being returned to him with the methamphetamine having been put inside the compartment by Defendant," and he "intended to simply return the backpack to the CS with the methamphetamine inside."  Memo. at 7-8.  Candelaria notes that he is otherwise eligible for the safety valve, because his

> criminal history is zero, he did not use violence or credible threats of violence, or possess the firearm in connection with the offense, his offense did not result in death or serious bodily injury to any person, he was not a leader in the offense and was not engaged in a continuing criminal enterprise, and [he] has endeavored, to the best of his ability, to provide full and complete cooperation with the Government.

Objection at 8.  See Memo. at 7-9 (reiterating his argument that he is safety valve eligible).

In the Addendum to the Presentence Report, dated December 23, 2013 ("Addendum"), the USPO maintains that Candelaria is not safety valve eligible, because he pled guilty to using

and carrying a firearm during in relation to a drug trafficking crime, and, thus, he "possessed a firearm in connection with trafficking methamphetamine."  Addendum at 1.

The United States asserts that Candelaria "is not eligible for an adjustment to his offense level under the safety valve because he admitted that he possessed a firearm in furtherance of his drug trafficking offense," and, thus, it "opposes any departure based on claims that the firearm was not possessed in connection with the drug trafficking offense."  United States' Sealed Sentencing Memorandum, filed December 30, 2013 (Doc. 31)("United States' Memo.").

The Court held a sentencing hearing on January 6, 2013.  The Court noted that, in its previous opinion -- United States v. Mendez-Velarde -- it had recognized a difference between constructive and active possession related to the § 2D1.1 enhancement, and to the § 5C1.2 safety valve.  See Transcript of Hearing at 5:10-6:20 (Court), taken January 6, 2013 ("Tr.").[2]  It said that Candelaria's situation is different, however, because the Court is not analyzing § 2D1.1, but 18 U.S.C. § 924(c), as that is the statute to which Candelaria pled guilty.  See Tr. at 6:20-7:2 (Court).  The Court directed the parties to United States v. Archuleta, 257 F. App'x 116 (10th Cir. 2007)(unpublished),[3] in which the Honorable Terrence L. O'Brien, United States Circuit

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[3]United States v. Archuleta is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

Judge for the United States Court of Appeals for the Tenth Circuit, said that the "in connection with requirement" from § 5C1.2 "is analogous to the in relation to requirement" in 18 U.S.C. § 924(c).  Tr. at 7:7-14 (Court).  The Court said that, under United States v. Archuleta, "there is a real possibility that the plea itself to Count II forecloses the argument that the safety valve should be granted."  Tr. at 7:24-8:2 (Court).  The Court noted that the Plea Agreement tracked the language of 18 U.S.C. § 924(c).  See Tr. at 8:2-16 (Court).  The Court went on to quote from the Plea Colloquy, noting specifically that Candelaria said that he would not be safety valve eligible and that, although he at first denied knowing that the firearm was in his vehicle, he eventually admitted that fact.  See Tr. at 8:18-11:23 (Court).  The Court quoted the following interaction among the Honorable Karen B. Molzen, United States Magistrate Judge for the District of New Mexico, who took Candelaria's plea; Candelaria; Candelaria's counsel, Thomas J. Clear, III; and the Assistant United States Attorney who was at the plea hearing, Holland Kastrin:

> Molzen:  One of my first questions is there is that mandatory minimum sentence of five years' incarceration on Count 1, the mandatory five years on Count 2 to run consecutive.  Is he safety valve eligible?
>
> Clear:  I don't believe so, your honor. (Inaudible)
>
> Molzen:  I believe that, that was my thought, but I just wanted to check.
>
> . . . .
>
> Molzen:  What would the government be able to prove if this matter proceeded to trial on Counts 1 and 2?
>
> Kastrin:  Certainly, your Honor.  If this case were to proceed to trial, the government would be able to prove that on or about February 28, 2013, the Defendant, Christopher Candelaria possessed over 50 grams of a substance containing methamphetamine; at the time he possessed it, he did so with the intent

---

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that United States v. Archuleta has persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

to distribute that substance to another person, and he did so in Sandoval County in the District of New Mexico; that at the time that he possessed over 50 grams of methamphetamine with the intent to distribute it, he was using and carrying a 40 caliber Berretta pistol and he did use and carry that during and in relation to his possession with intent to distribute a substance containing methamphetamine.

. . . .

Molzen:       Mr. Candelaria, how do you plead on, as to Count 1?

Candelaria:   Guilty.

Molzen:       How about as to Count 2?

Candelaria:   Guilty.

Molzen:       Tell me what you did that makes you guilty of these offenses?

Candelaria    I went to deliver --

Molzen:       I need you to speak up for me.

Candelaria:   I went to deliver 50 grams or more --

Molzen:       -- 50 --

Candelaria:   -- grams or more of methamphetamines.

Molzen:       You knew it was methamphetamine?

Candelaria:   Yes ma'am.

Molzen:       Ok, so you were purposely trying to, were you trying to sell the methamphetamine?

Candelaria:   Yes.

Molzen:       And did you have a firearm in your possession, the one that is described in the indictment?

Candelaria:     Yes.

Molzen:         And <u>did you use or carry that in connection with that drug trafficking offense?</u>

Candelaria:     <u>It was in the car</u>, it wasn't --

Molzen:         <u>Did you know it was in the car?</u>

Candelaria:     <u>No.</u>

Molzen:         Oh, ok, that, I, that won't do it.

Clear:          So you weren't aware it was in the car?

Candelaria:     Hmm-mh.

Molzen:         If he didn't know the gun wasn't, that the gun was present, then he's not guilty of using and carrying.

Clear:          It was found in the same compartment with the drugs, but you weren't aware that it was in there? [Pause]

Candelaria:     Yeah, it was in there.  It's fine.  It was in there.

Molzen:         No, I can't just have you saying 'it's fine.'  You're under oath and you told me that you did not know that it was there.  Either you did know --

Candelaria:     -- 'Cause I --

Molzen:         You are bound to tell me the truth.  <u>Did you know it was in the car?</u>

Candelaria:     <u>Yes.</u>

Molzen:         <u>And you have that it was in the same compartment with the methamphetamine?</u>

Candelaria:     <u>Yes.</u>

Molzen:       Any questions that you want me to ask?

Kastrin:       I believe now with that clarification, that now it is sufficient for the use and carrying during or in relation to.  <u>I'd like to simply note that I'm presuming that the earlier statement was the result of a misunderstanding or miscommunication, as opposed to any type of intentional misrepresentation.</u>

Clear:         <u>Is that correct?</u>

Candelaria:    <u>Yes.</u>

Molzen:       Alright, do you understand everything that was happening, Mr. Candelaria?

Candelaria:    Yes.

Molzen:       Then I, it is the finding of the Court that the Defendant, Christopher Candelaria, is fully competent and capable of entering an informed plea, to where the nature of these charges and the consequences that the plea, and these pleas of guilty are knowing, voluntary, and they are supported by an independent basis in fact that contains all the elements of the offense.  I accept your pleas on Counts 1 and 2 and now adjudge you guilty of that crime.  I'll defer acceptance of the plea agreement and leave that up to Judge Browning.

Liberty Court Recorder at 1:54:38-1:58:04, taken July 24, 2013 (emphasis added).  The Court said that it was inclined to overrule Candelaria's objection, because, by pleading guilty to 18 U.S.C. § 924(c), he could not meet the requirements of § 5C1.2, and further, because Candelaria conceded at the Plea Colloquy that he was not safety valve eligible.  <u>See</u> Tr. at 11:24-12:9 (Court).  The Court asked whether Candelaria would prefer the Court not to accept his guilty plea and the Plea Agreement; Candelaria responded that he did "not want to raise any issue that [would] cause the plea to not be effective."  Tr. at 12:11-24 (Court, Clear).

Candelaria explained that he thought it was appropriate to argue for the safety valve, considering that the firearm was located in the CS' bag and he intended only to deliver the

methamphetamine to the CS without using the firearm, but that he did not want to lose the

benefit of the Plea Agreement.  See Tr. at 13:4-14:16 (Clear).  The United States countered that

> the defendant cannot on one hand plead guilty and admit that the United States
> could prove beyond a reasonable doubt that he knowingly possessed that firearm
> during and in relation to and in furtherance of a drug trafficking crime in order to
> secure the three points for acceptance of responsibility and then turn around and
> say that the possession of the firearm was not in connection with that drug
> trafficking crime.

Tr. at 15:3-12 (Mysliwiec).  The United States noted its concern about defendants pleading guilty

to crimes that they did not commit to receive a lesser sentence, but, given Judge Molzen's

questioning at the Plea Colloquy, it said it was satisfied that Candelaria pled guilty because he

was actually guilty and that Candelaria's answer that he did not know the firearm was in the

backpack was a miscommunication.  See Tr. at 15:14-16:22 (Mysliwiec).  The Court asked

Candelaria to affirm what he knew about the firearm's location in the backpack with the

methamphetamine:

> Court:        I think I will have Mr. Candelaria affirm what Judge Molzen
> said -- that Judge Molzen said, and so I'll ask you the same question
> Mr. Candelaria, you knew the gun was in the car.
>
> Candelaria:   I did.
>
> Court:        And you knew it was in the same compartment with the
> methamphetamine.
>
> Candelaria:   Yes, sir.
>
> Court:        All right.  And you're tell[ing] the Court the truth today.
>
> Candelaria:   Yes.
>
> Court:        All right.  Then I'll ask you to affirm what you said also in [y]our
> plea agreement to satisfy the Court that I should accept your plea of guilty.  And
> the plea agreement stated in rel[ation] to what we've been talking about this
> afternoon at the same time that you committed the drug trafficking offense, you
> stated I also used and carried a .40 caliber [Beretta] pistol during and in relation to

my possessing the substance containing methamphetamine.   Is that statement true[?]

Candelaria:     Yes.

Court:           And you continue to make that statement and want the Court to believe that that's the truth?

Candelaria:     Yes.

Tr. at 16:25-17:25.

## ANALYSIS

The Court will overrule Candelaria's objection to the PSR, because he is not safety valve eligible under § 5C1.2.  The Tenth Circuit's decision in United States v. Archuleta leads the Court to this conclusion, combined with Candelaria's admissions and concessions in the Plea Agreement and at the Plea Colloquy.

Candelaria pled guilty to two counts, including using and carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A).   See Plea Agreement ¶ 3(b). 18 U.S.C. § 924(c)(1)(A) provides:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years . . . .

18 U.S.C.A. § 924(c)(1)(A).   To be eligible for the safety valve in U.S.S.G. § 5C1.2, one requirement is that "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense."  U.S.S.G. § 5C1.2(a)(2).

Although Candelaria correctly notes that the Court has previously determined that the "in connection with" language in § 5C1.2(a)(2) is narrower than U.S.S.G. § 2D1.1(b)(1), which

provides that, "'[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels,'" United States v. Mendez-Velarde, 798 F. Supp. 2d at 1252 (quoting U.S.S.G. § 2D1.1(a)(5)), his argument falls short, because the Court is not comparing § 5C1.2(a)(2) to § 2D1.1(b)(1), but rather, it is comparing the "in connection with" language in § 5C1.2(a)(2) to the "in relation to" and "in furtherance of" language in 18 U.S.C. § 924(c)(1)(A).  The Tenth Circuit in United States v. Archuleta determined that

> [t]he "in connection with" requirement is analogous to the "in relation to" requirement of 18 U.S.C. § 924(c)(1).  United States v. Walters, 269 F.3d 1207, 1219 (10th Cir. 2001)(applying USSG § 2K2.1(b)(5) which enhances a defendant's base offense level if he used or possessed a firearm "in connection with another felony offense")(quotations omitted).  The "in relation to" requirement of § 924(c)(1) is satisfied if the firearm "facilitates or has the potential to facilitate the offense but is not satisfied if the weapon's possession is coincidental or entirely unrelated to the offense." Id. (quotations omitted).  Thus, "a firearm's proximity and potential to facilitate the offense is enough to prevent application of [U.S.S.G. § 5C1.2(a)(2) ]." United States v. Hallum, 103 F.3d 87, 89 (10th Cir.1996).

United States v. Archuleta, 257 F. App'x 116, 123 (10th Cir. 2007)(unpublished).  In that case, the defendant had pled guilty to "conspiracy to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. § 846," and to "carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)." 257 F. App'x at 119.  The defendant had left the firearm in the console of his car when he went into another vehicle to sell methamphetamine to the undercover officers, but the Tenth Circuit concluded that "both proximity and the potential to facilitate the offense" were present, and thus, the defendant used or possessed the firearm in connection with the drug trafficking offense.  257 F. App'x at 13-24.  The Tenth Circuit noted that, "[e]ven if the firearm did not directly facilitate the drug transaction (as the district court concluded), it certainly had the potential to do so." 257 F. App'x at 124.

Similarly here, Candelaria admitted that he "used and carried a .40 caliber Beretta pistol during and in relation to" possessing methamphetamine, Plea Agreement ¶ 3.A; the Court finds that he used or carried that firearm "in relation to" the drug trafficking offense, because of the firearm's close proximity to the drugs -- they were in the same backpack -- and the firearm's potential to facilitate the offense, and because Candelaria admitted to knowing that the firearm was in the backpack, meaning that, had he felt threatened, he could have retrieved the firearm to protect himself or the drugs.  The Court will deny Candelaria's request for safety-valve relief that he made in the Memo. and will overrule his Objection.

**IT IS ORDERED** that: (i) the Defendant Christopher Candelaria's request for a 2-level reduction under United States Sentencing Guidelines § 5C1.2 that he made in the Sealed Sentencing Memorandum Requesting Downward Departure and Downward Variance, filed December 20, 2013 (Doc. 29), is denied; and (ii) the Sealed Defendant's Objection to Presentence Investigative Report, filed December 20, 2013 (Doc. 30), is overruled.

                                   _____
                                   UNITED STATES DISTRICT JUDGE

*Counsel:*

Steven C. Yarbrough
  Acting United States Attorney
Paul Mysliwiec
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

David R. Foster
David Foster Law Firm PC
Albuquerque, New Mexico

--and--

Thomas J. Clear, III
Clear & Clear PA
Albuquerque, New Mexico

*Attorneys for the Defendant*